ERVIN, J.
Ronald Roberts (claimant or appellant) appeals a final workers’ compensation order denying his petition for certain medical benefits. We affirm in part, reverse in part, and remand with directions that ap-pellees pay for the expenses required by two of the requested procedures, a urological consultation and a bone scan.
Claimant’s petition sought payments for (1) an unauthorized surgery for treatment of an upper spine LI, industrial injury, (2) a urological consultation, (3) a bone scan, and (4) authorization of a disco-gram. We affirm the order of denial as it relates to the surgery and the discogram. As to the former procedure, the expert opinion of claimant’s treating physician and the opinions of two independent medical examiners (IMEs) constitute competent, substantial evidence in support of the judge of compensation claims’ (JCC) determination that the surgery was unnecessary. As to the denial of a discogram, although we agree that the reason given by the JCC is lacking in evidentiary support, ie., that a discogram had already been provided, and the request for same related to symptoms associated with a non- *531 compensable L4-5 condition,[1] we nonetheless affirm, because the discogram of the upper spine could not reasonably provide claimant any benefit in that the corrective surgery for the LI condition had been performed by the time of the hearing on claimant’s petition for benefits.
It should be observed that it is the purpose for which the tests are undertaken, rather than the results, which determines the compensability of same. See Martinez v. Ass’n of Poinciana, 642 So.2d 118 (Fla. 1st DCA 1994). Obviously, the discogram would not resolve any question of whether claimant’s fractured upper spine was caused by the work-related accident, which was not at issue. The only other possible purpose would be to ascertain whether spinal surgery would benefit claimant. In that claimant proceeded with the surgery, prior to the hearing on his petition, a post-operative evaluation would serve no purpose, because any possible indicated need for repair already had been accomplished.
We agree, however, that the JCC erred in denying the claims for payment of a urological consultation and a bone scan, both of which were recommended by claimant’s IME, Dr. Jed Weber. In rejecting the claims, the JCC concluded that Dr. Weber’s recommendation was the result of a misstatement by claimant as to the time he had experienced the onset of his incontinence symptoms. The record does not support the JCC’s finding. In this regard, Dr. Weber evaluated claimant initially on November 19, 2001, at which time claimant provided a history of 2-1/2 years of low back pain, right lower extremity pain and numbness, and bowel and bladder incontinence. Claimant testified at the final hearing that he did not have incontinence problems while under the care of his initial treating orthopedist, Dr. Richard Abdo, from June 16, 1999, until December 17, 1999. Claimant further stated his incontinence problems began when his spinal orthopedist, Dr. Paul Zak, who commenced treatment of claimant’s industrial injury on December 7,1999, prescribed a Duragesic patch to control pain. Because claimant’s initial care with Dr. Zak occurred slightly less than two years before his evaluation with Dr. Weber, the record substantially supports the time frame claimant provided to Dr. Weber regarding his incontinence symptoms. Therefore, the JCC’s rejection of Dr. Weber’s opinion for the reason that it was based on a factual inaccuracy in the history given him by claimant is not based on competent, substantial evidence.
AFFIRMED in part, REVERSED in part, and REMANDED.
PADOVANO and THOMAS, JJ., concur.

. No discogram had been offered for the injury at the LI location of the spine, although there was no dispute, by reason of the parties' stipulation and the medical testimony, that the LI fracture was the result of the compen-sable injury.